FILED
2014 Aug-05  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| Misty Dawn Gray, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:13-CV-01361-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Misty Dawn Gray, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Ms. Gray timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Gray was thirty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education, as well as a General

Equivalency Diploma. (Tr. at 31.) Her past work experiences include employment as a retail cashier and shift supervisor/assistant manager. (Tr. at 18.) Ms. Gray claims that she became disabled on July 11, 2007, due to lower back pain, bilateral hip pain, knee and ankle pain and swelling, and that her disabilities were further exacerbated by events stemming from the April 27, 2011, tornado in Tuscaloosa, Alabama. (Tr. at 15-17.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Gray meets the non-disability requirements for a period of disability and DIB and was insured

through the date of his decision. (Tr. at 10.) He further determined that Ms. Gray has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, Plaintiff's obesity, asthma, mild degenerative disc disease (DDD) of the lumbar spine, osteoarthritis (OA), depression, and posttraumatic stress disorder (PTSD) are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 12.) The Commissioner did not find Ms. Gray's allegations to be totally credible, and he determined that she has the following residual functional capacity: simple, unskilled work; she can tolerate infrequent changes to her workplace that are gradual in nature and well explained; she can tolerate only occasional interaction with the public, coworkers, and supervisors; she should avoid tandem tasks with coworkers; and she is able to climb ramps/stairs, balance, stoop, kneel, and crouch frequently and crawl occasionally. *Id.*

According to the ALJ, Ms. Gray is unable to perform any of her past relevant work. (Tr. at 18.) He determined that Plaintiff is a "younger individual" and has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." *Id.* The ALJ found that Ms. Gray has the residual functional

capacity to perform light, simple, unskilled work. (Tr. at 14.) The ALJ used Medical-Vocational Rule 202.21 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as parking lot attendant and cashier. (Tr. at 19.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id.*

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Gray alleges that the Commissioner's decision should be reversed and remanded because, in assessing Ms. Gray's mental health, the ALJ gave too little weight to the opinion of Dr. Goff, a one-time examining neuropsychologist, while giving too much weight to the opinions of two non-examining state-agency physicians,

Drs. Estock and Heilpern.  (Doc. 11 at 9.)

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as " your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2)  a non-treating source, which is defined as " a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;"  and 3) a non-examining source, which is a " a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.  The regulations and case law set forth a general preference for

treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).  However, an ALJ " may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

After thorough review, this Court is of the opinion that substantial evidence supports the ALJ's decision to give Dr. Goff's opinion little weight.  Dr. Goff examined Plaintiff on May 15, 2012, for a psychological evaluation. (Tr. at 459.) During the examination Plaintiff alleged injuries following the tornado in April of 2011 in Tuscaloosa, Alabama, she but admitted she had not returned for mental health treatment since then.  (Tr. at 456.)  Plaintiff obtained a full scale IQ of 88 and a verbal IQ of 87, placing her in the low average range of intelligence.  (Tr. at 457.)  Dr. Goff ultimately diagnosed Ms. Gray with depression and PTSD.  (Tr. at 458.)  He concluded that Plaintiff's " medical problems" would interfere with her ability to deal with the stresses and pressures of the workplace. *Id.*  On a functional capacity form, Dr. Goff indicated that Plaintiff would have " marked" and " extreme" mental limitations. (Tr. 460-62.)

As an initial matter, the severity of limitations noted by Dr. Goff is inconsistent with his own narrative report from the examination. Dr. Goff noted that Plaintiff "was able to understand, follow, and carry out simple instructions," but was "somewhat confused by complex sorts of instructions and would have difficulty responding to instructions requiring a substantial physical response." *Id.* However, in his report he opined that she had only a mild impairment in her ability to understand and carry out complex instructions. *Id.* He also noted in his narrative that Plaintiff had reported problems with anger management, but then opined that she has only a mild impairment in her ability to interact appropriately with the general public and a moderate impairment in her ability to get along with co-workers and peers. *Id.* Despite Plaintiff's reported anger management problems, Dr. Goff noted that a rapport with her was "easily established and well maintained." (Tr. at 456, 458.)

Additionally, Dr. Goff's findings of "marked" and "extreme" mental limitations are contradicted by the fact that Plaintiff underwent very little medical treatment, let alone mental health treatment, during the relevant periods for DIB—July 11, 2007 through December 31, 2008—and SSI—September 3, 2010 through the date of the SSI application.

On September 27, 2007, an MRI of the lumbar spine revealed only mild facet

arthropathy with no disc herniation. (Tr. at 243.) On October 15, 2007, Plaintiff was treated with medication for depressive disorder at Indian Rivers Mental Health Center ("Indian Rivers"). (Tr. at 260.) At this visit she reported that she was not working because she was trying to get on disability. (*Id.*) At a subsequent visit on December 27, 2007, Plaintiff's medications were changed. (Tr. at 389.) On April 24, 2008, Plaintiff returned to Indian Rivers and reported improvement in her depression with medication. (Tr. at 262-64.) This was her last documented visit at Indian Rivers. On June 5, 2008, she was treated at DCH Hospital for bronchitis and otisis. (Tr. at 298-302.) On December 11, 2008, Plaintiff was treated at Whatley Health Services, and non-compliance with medication for depression and hypertension was noted. (Tr. at 448.) There is no additional treatment prior to December 31, 2008.

Beginning on September 3, 2010 through the date of the SSI application, the record reveals no mental health treatment and few medical visits. On September 2 and 3, 2010, Plaintiff was treated at DCH Hospital for complaints of a headache. (Tr. at 269-89.) Testing was normal. (Tr. at 273-74, 277, 280, 289.) On March 28, 2010, Plaintiff was treated at DCH for conjunctivitis. (Tr. at 291-95.) On March 8, 2011, Plaintiff returned to Whatley Health Services with complaints of migraines and leg pain. (Tr. at 438.) It was noted that Plaintiff had a full range of motion and was

negative for radiculopathy.  (Tr. at 438.)  Plaintiff was counseled to lose weight.  (Tr. at 438.)  On the day of the tornado, April 27, 2011, Plaintiff was treated at Cooper Green Hospital for fractures of the left hip, and left fifth metacarpal.  (Tr. at 463-81.)  Fractures were also noted in the lumbar spine.  (Tr. at 473.)  Plaintiff was advised to undergo physical therapy.  (Tr. at 481.)  On August 22, 2011, Plaintiff was seen at Whatley Health Services for complaints of hip pain and medication refills.  (Tr. at 437.)   On January 18, 2012, she had a normal physical examination except for tenderness in her left hip, and she was prescribed Diclofen, Prozac, Buspar, and Norvasc.  (Tr. at 250-55.)  On February 2, 2012, Plaintiff was treated at DCH for colitis. (Tr. at 399-402, 418-23.)  On March 22, 2012, Plaintiff was treated at Whatley Health Services for colitis, pharyngitis, and hypertension.   This record does not support Dr. Goff's finding of "marked" and "extreme" mental limitations.

Moreover, Plaintiff's complaints to Dr. Goff, on which he presumably relied in finding her to have "marked" and "extreme" difficulties, are not supported by the mental health records that are in the record, including Plaintiff's own testimony.  Plaintiff claimed ongoing symptoms of depression and PTSD that she blamed on her abusive childhood and on the April 27, 2011, Tuscaloosa tornado. (Tr. at 33, 455-56.)  While Plaintiff reported that she had seen significant benefit from psychotropic

medication in the past, she sought assistance at the Mental Health Center only infrequently between April 2008 and May 2012. At these infrequent visits, Plaintiff did not always complain of depression.  Plaintiff stated that she was unable to seek frequent treatment because she could not afford the $20.00 co-pay to be seen; however, Plaintiff opines that she manages to support her daily tobacco habit and dines out frequently with her family. (Tr. at 52-53.)  " [R]efusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11 th Cir. 1988).  While " poverty excuses noncompliance," *id.*, the Eleventh Circuit has upheld an ALJ's ability to consider a claimant's failure to comply with a treatment regimen as a factor in assessing his or her credibility.  *See e.g., Brown v. Astrue*, 298 F. App'x 851, 852 (11th Cir. 2008) (although the plaintiff stated that he could not afford the necessary treatment, he also acknowledged that the Veteran's Administration provided medications and the medical records revealed that he received samples of medications); *East v. Barnhart*, 197 F. App'x 899, 905 (11th Cir. 2006) (substantial evidence supported the ALJ's determination that the claimant was not credible because although she alleged that she could not afford her prescription medications, she " used her children's child support to buy up to 45 packs of cigarettes per month" ).  Plaintiff also reported that she has

had difficulty dealing with authority figures and anger management throughout her life, and claims that she lost all of her jobs because of these problems. (Tr. at 455-56.) While Plaintiff's work history does reflect multiple jobs of short duration and her treatment records from Indian Rivers reflect a reported history of childhood physical and emotional abuse, no observations of heightened anger or difficulty interacting were recorded during these examinations. (Exhibits 4D, 4F.) Plaintiff further claims that she is able to form and maintain long-term relationships, has a close relationship with her family members, and frequently interacts with restaurant staff and store clerks with no reports of difficulty interacting. (Tr. at 40-44.)  In any event, the ALJ accounted for these symptoms by finding that Plaintiff had severe impairments due to depression and PTSD.

Finally, Dr. Goff's opinion is also contradictory to the opinions of the two state-agency non-examining physicians.  Dr. Estock, a state agency psychiatrist, reviewed the medical evidence on October 28, 2010, and reported that Plaintiff demonstrated only "mild" and "moderate" functional limitations. (Tr. at 365.) Dr. Estock opined that Plaintiff could engage in personal care, shop, and drive a vehicle. (Tr. at 366.)  He noted that Plaintiff was alert, oriented, and exhibited a normal mood.  (Tr. at 367.) The ALJ gave Dr. Estock's opinion partial weight.  Dr. Heilpern, also a state agency

physician, reviewed the medical evidence on October 29, 2010, and reported that Plaintiff could occasionally crawl, could frequently climb ramps and stairs, stoop, kneel, and crouch, and could frequently lift and carry up to 25 pounds and could sit or stand and walk up to 6 hours in an 8 hour day. (Tr. at 370-71.) Dr. Heilpern opined that Plaintiff could perform medium and light work. (Tr. at 369-76.)  The ALJ gave Dr. Heilpern's opinion substantial weight.  Social Security Ruling 96-6p allows for the opinions of non-examining medical sources to be granted the same weight as the opinions of treating medical sources if they are supported by an accurate and comprehensive record.  Here, the opinions of Drs. Estock and Heilpern are each consistent not only with the other's diagnosis, but also with the record as a whole. Plaintiff complains that these opinions predate, and thus do not take into the account, her PTSD following the April 27, 2011 tornado, but as mentioned, the ALJ accounted for depression and PTSD in finding those ailments to be severe under the regulations. The ALJ ultimately found that even with those impairments, Plaintiff could do light work with additional restrictions, a finding that is consistent with substantial evidence in the record.  As noted, with regard to Plaintiff's DIB application, she only sought limited mental health treatment through April 2008.  With regard to her SSI application, she had only a brief period of left hip pain ending in January 2012, and

aside from Dr. Goff's report, no documented mental health issues.

For these reasons, the Court is of the opinion that the ALJ appropriately gave little weight to Dr. Goff's May 2012 assessment of Plaintiff's condition.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Gray's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 5<u>th</u> day of <u>August 2014</u>.

L. Scott Coogler
United States District Judge
[160704]